Eugene Howard **BERRY**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17342.

Court of Criminal Appeals of Oklahoma.

June 21, 1972.

Curtis A. Parks, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Ray Parks, Legal Intern, for appellee.

BUSSEY, Presiding Judge:

Appellant, Eugene Howard Berry, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Oklahoma, for the offense of Arson in the Second Degree; his punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Roy Gann, Fire Marshal for the city of Tulsa, testified that at approximately 8:00 a. m. on July 29, 1970, he investigated a fire which occurred at the Majestic Theater in Tulsa. He testified that he "discovered pop bottles had been placed in various places, and on various pieces of equipment in the theater, and that they smelled of gasoline." (Tr. 10) He further testified that separate fires were set in the rectifier, the projector and the projection room. Some X-rated films had been removed from the containers and were stacked in a pile; a pop bottle containing gasoline had been placed on top of them. He testified that in his opinion the fires were set by an arsonist and were separate incidental fires. On cross-examination he testified that the fires were set, in his opinion, to destroy the films and projection process.

Peggy Moe testified that defendant came to her home the afternoon of August 3, 1970, and was in good spirits. She testified that "my husband asked him how he was and he said he had been fine and wanted to know did we read about him." When they replied no, the defendant said "Well, my name is not on these papers but it should have been." Defendant then produced clippings from a paper describing the fire at the theater. Defendant stated that he met a man who didn't like the lewd pictures at the theater and who asked him to help him destroy them. Defendant furnished the fuel and the pop bottles for the fire and broke the glass to the projection booth. She testified on cross-examination that the defendant did not appear to be under the influence of alcohol or drugs but that the defendant talked in a loud voice and his eyes did appear "a bit glassy."

Alfred Moe testified to substantially the same facts as that his wife had testified to previously. He testified that the defendant looked "kind of wild" while he was telling them the story.

Officer Compos testified that he observed smoke coming from the theater at approximately 4:05 a. m. and notified the fire department.

Roy Gann was recalled and testified that in his opinion if the fire department had not been called, the building might have burned down.

Officer Jones testified that he investigated the scene of the fire and had a conversation with the Moes. He proceeded to the defendant's residence and found that it was secured by a padlock and a note advising the defendant that he owed some back rent. The landlord, Mr. Walter, subsequently let the officer into the defendant's apartment where he found a two-gallon can of gasoline and an empty five-gallon can. He subsequently located the defendant, placed him under arrest and found a newspaper clipping describing the fire at the theater in the defendant's wallet.

Defendant testified that he did not furnish the gasoline or pop bottles nor did he assist any person in setting the fire at the theater. He testified that the gasoline cans were in his apartment because he had been repairing lawnmowers. He testified that he did have a conversation with the Moes on August 3, and that he did show them a clipping from the paper. He denied that he told them that he had assisted in burning down the building and testified that he carried the clipping and showed it to several people because he thought that it was a shame that a beautiful building like that had been burned. Defendant fur-

ther testified that he had spent seventeen years in the Eastern State Hospital at Vinita but that "I am not claiming insanity." (Tr. 67) He testified that his competency was restored in 1968.

■ The first proposition asserts that the court erred in overruling defendant's demurrer to the State's evidence for the reason that the crime alleged in the information had not been proven. Defendant was charged under the provisions of 21 O.S. § 1402, which provides as follows:

"Any person who willfully and maliciously sets fire to or burns or by the use of any explosive device or substance destroys in whole or in part, or causes to be burned or destroyed, or aids, counsels or procures the burning or destruction of any building or structure, public or private, other than dwelling houses or contents thereof, the property of himself or another, shall be guilty of arson in the second degree, and upon conviction thereof shall be punished by a fine not to exceed Twenty Thousand Dollars ($20,000.00) or be confined in the penitentiary for not more than fifteen (15) years or both."

Defendant argues that the State's evidence proved that the fire was started for the purpose of burning the personal property inside the theater rather than the building itself. We observe that although Fire Marshall Gann testified on cross-examination that in his opinion the fire had been set with the intent to burn the film and projection equipment, he was recalled and testified that the fire actually burned part of the interior of the building. Title 21 O.S. § 1402 does not require that a defendant must have the intent to burn the building itself, but rather provides that the act of Arson in the Second Degree is committed by "Any person who willfully and maliciously sets fire to or burns * * in whole or in part, * * * any building or structure * * *". We therefore conclude that the trial court properly overruled defendant's demurrer to the information.

■ Defendant's final proposition contends that the trial court erred in refusing to submit the question of defendant's sanity to the jury. We are of the opinion that the trial court properly refused to give the defendant's requested instruction upon the question of insanity to the jury. Defendant testified on cross-examination as follows:

"Q. Mr. Berry, where were you for the last 2 or 3 months?

"A. Eastern State Hospital, for observation.

"Q. All right, sir, I show you what has been marked—as—

"MR. GASKILL: Your Honor, we object to this line of questioning, it's totally incompetent, does not serve any purpose of impeachment, or any other purpose.

"THE COURT: I think preliminary questions ought to be asked.

"Q. (By Mr. Byars) Are you claiming you are not sane?

"A. No sir.

"Q. And you are claiming that you are sane, is that right?

"MR. GASKILL: He said he's sane.

"Q. (By Mr. Byars) Are you sane and know what you are doing?

"A. I think I am, I've got out in '68, I got my competency restored.

"Q. All right, then you got a letter from the Chief at the Eastern State Hospital—I am not—

"A. I am not claiming insanity." (Tr. 67)

We are of the opinion that the defendant should not be allowed to testify that he is not claiming insanity and then complain on appeal that the trial court erred in not giving his requested instruction upon the question of insanity. We further observe that the record before this Court reflects that defendant was committed to the Eastern State Hospital for observation on September 30, 1970, and by letter from Dr. B. F. Peterson dated November 13,

1970, the District Court was advised that the defendant was found not to be psychotic and that he could distinguish right from wrong and could assist his counsel in his defense. We therefore find this proposition to be without merit.

In conclusion we observe the record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

SIMMS, and BRETT, JJ., concur.